UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANIEL DELANO,

                Plaintiff,

      -vs-                                                    08-CV-610C

UNITED STATES OF AMERICA,

                Defendant.

---

APPEARANCES:    J. MICHAEL HAYES, ESQ., Buffalo, New York, Attorney for Plaintiff.

                            WILLIAM J. HOCHUL, UNITED STATES ATTORNEY (MICHAEL S. CERRONE, Assistant United States Attorney, of Counsel), Buffalo, New York, Attorneys for Defendant.

In this action against the United States, brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, plaintiff Daniel Delano seeks money damages for injuries he allegedly sustained while loading mail at the United States Postal Office in Dunkirk, New York, on October 26, 2005. Defendant has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons that follow, defendant's motion is denied.

## **BACKGROUND**

At the time of the incident alleged in the complaint, plaintiff was working as a Highway Contract Route ("HCR") truck driver and delivery man for Wayman's Trucking, under an existing contract between Wayman's and the United States Postal Service

("USPS") to transport mail from the main distribution facility in Buffalo to post offices in the Dunkirk and Fredonia area. Item 1 (Complaint), ¶ 6; *see also* Item 34 (Deft. Statement of Undisputed Facts), ¶ 3. He had worked as a delivery man for mail contractors since 1992. Item 34, ¶ 5. His regular duties including driving the delivery truck to the main USPS processing and distribution facility on William Street in Buffalo, manually loading containers of mail onto the truck, driving the truck to the post offices on his designated route, and manually unloading the containers at the destination. *See id.* at ¶ 7; *see also* Item 35, Ex. A (Pltff. 2/18/09 Deposition Transcript), pp. 13-15.

The USPS uses several different types of containers to process and transport the mail. *See* Item 36 (Bombaugh Decl.), ¶ 8. Plaintiff testified that on his route, the mail was usually loaded for transport in all purpose containers ("APCs") which were made out of plastic, or canvas-sided hampers. Both types of containers were on wheels and ordinarily could be loaded onto the truck manually by the driver. Occasionally, if the load was large or if a container was noticeably overloaded, plaintiff would ask for assistance from a mail handler or other USPS personnel. Item 35, Ex. A, pp. 13-14.

In November 2004, the USPS introduced a new container known as the "84C Collapsible Wire Container" as a transport alternative to the standard "Rigid Wire Container," which had been in use for many years. *See* Item 36, ¶ 12, and Ex. G attached thereto. The new Collapsible Wire Container had a full load capacity of 2000 lbs. *Id.* at , Ex. G. Plaintiff testified that he began to experience problems with these new "wiretainers" soon after they were implemented for mail transport use at the William Street facility in the summer of 2005. Specifically, he testified that the containers were often overloaded by the mail handlers, which made the containers too heavy to maneuver

without assistance. The weight of the containers also caused visible gauges in the concrete on the floor of the loading dock at the Dunkirk facility, which in turn would cause the front wheels of the container to get caught up when plaintiff tried to push the container on to the dock. *See* Item 35, Ex. A, pp. 35, 40-47.

On October 26, 2005, plaintiff arrived at the William Street facility in the early morning hours to load the mail onto his truck. He noticed that the Collapsible Wire Container he was to transport to Dunkirk was overloaded, so he asked a mail handler to help him load it onto his truck. Item 35, Ex. A, pp. 51-52. He arrived at the Dunkirk Post Office at approximately 3:00 a.m., and went through his regular routine to unload the mail. He pushed the loaded Collapsible Wire Container off of the truck and onto a "scissor jack," which he then lowered to the level of the loading dock. When he attempted to move the container off of the jack and onto the loading dock, the front wheels got caught up on the grooves in the concrete and would not move. He located a metal "shoring bar" on the loading dock and used it to pry the container free from the impediment. When he stood up he felt a burning sensation in his lower back. *Id.* at pp. 34-35, 60, 68, 73-75.

Plaintiff claims that as a result of this incident he sustained injuries to his thoracic and lumbar spine, including a herniated disc at L4-5 which required corrective microdiscectomy surgery. Item 34, ¶ 40; *see also* Item 25, Exs. B, C. As set forth in the complaint, plaintiff claims that his back injuries were caused by defendant's negligence "in causing, permitting and allowing the dock areas of the Dunkirk Post Office . . . to become and remain in a broken, defective, uneven, trap-like, hazardous and dangerous condition . .

. ." Item 1, ¶ 7. He seeks various categories of compensatory damages amounting to $1.5 million.[1]

The United States moves to dismiss the complaint for lack of subject matter jurisdiction, or, in the alternative, for summary judgment, on the ground that the FTCA's limited waiver of sovereign immunity does not apply in this case because the injury arose from the exercise of a discretionary function–namely, the Postal Service's decision to implement the Collapsible Wire Container, which led directly to plaintiff's injury.

## DISCUSSION

As this court recently discussed in *Kwitek v. U.S. Postal Service*, 694 F. Supp. 2d 219 (W.D.N.Y. 2010), the FTCA provides a limited waiver of sovereign immunity with respect to claims against the United States that seek money damages for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b); *Kwitek*, 694 F. Supp. 2d at 224. A significant limitation on this waiver of immunity is the discretionary function exception, which provides that the FTCA's authorization to sue the United States for damages

> shall not apply to . . . [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of . . . an employee of the Government, whether or not the discretion involved be abused.

---

[1] Plaintiff previously moved to amend the *ad damnum* clause of the complaint in order to raise the amount of damages sought to $2.5 million, based upon evidence related to an aggravation of the original injury. By order entered August 25, 2010 (Item 39), this court denied the motion, finding that because no new evidence or intervening facts had been presented that were not reasonably discoverable at the time plaintiff's administrative claim was filed with the USPS, plaintiff's recovery under the FTCA was limited to the amount set forth in the administrative claim ($750,000). *See Delano v. United States*, 2010 WL 3386835, at *3-4 (W.D.N.Y. Aug. 25, 2010).

28 U.S.C. § 2680(a)

The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)). The Supreme Court has observed that this exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Varig Airlines*, 467 U.S. at 808, *quoted in Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The standard that has emerged from the *Varig*, *Berkovitz*, and *Gaubert* decisions for determining whether the discretionary function exception applies in a given case requires this court to consider (1) whether the acts alleged to be negligent are "discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation . . . ," and (2) whether the judgment or choice in question is "grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (quoting *Gaubert*, 499 U.S. at 322-23, and *Berkovitz*, 486 U.S. at 536-37). The government has the burden of proving that both conditions have been satisfied. *Kwitek*, 694 F. Supp. 2d at 227 (citing *King v. United States*, 491 F. Supp. 2d 286, 296 (D.Conn. 2007)).

In applying the first prong of this standard, the court first must identify the conduct that is alleged to have caused the harm, then determine whether that conduct can fairly be described as discretionary. *See Fothergill v. United States*, 566 F.3d 248, 252 (1st Cir.

2009), *cert. denied*, ___U.S.___, 130 S.Ct. 1892 (2010).  Plaintiff claims that the conduct at issue is the negligent maintenance of the loading dock at the Dunkirk postal facility, while the government contends that the injury suffered by plaintiff is directly traceable to the Postal Service's discretionary decision to implement the Collapsible Wire Container.

Though not identical, these positions are substantially similar to the arguments advanced in the *Kwitek* case.  Like Mr. Delano, Mr. Kwitek was a driver for a mail delivery contractor.  He was injured while loading rigid wire containers onto his truck at a USPS facility in Niagara Falls, New York.  He claimed that ordinarily there was a mail handler or other USPS employees present at the loading dock when he arrived to load the mail, but on the day in question no one was there, so he pushed the heavily laden containers onto the truck himself.  He sued under the FTCA, claiming that the injuries he sustained were the result of negligence on the part of the USPS in failing to provide him with the required personnel or equipment to safely load his truck.

The government moved to dismiss the complaint for lack of subject matter jurisdiction, relying on the discretionary function exception as well as the express exclusion from the FTCA's limited waiver of immunity with respect to negligence claims arising from work performed for the government by independent contractors.  *See* 28 U.S.C. § 2671 (as used in § 1346(b), "the term 'Federal agency' does not include any contractor with the United States."); *see also Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997) ("as a general rule, sovereign immunity precludes suits against the United States for injuries caused by its independent contractors"), *cert. denied*, 523 U.S. 1095 (1998).  The government contended that the conduct causing the harm was directly traceable to the decisions to delegate mail hauling work to independent contractors and to utilize the rigid

wire containers, which were discretionary functions based upon policy considerations of efficiency and cost, and not compelled by any law or regulation. *See Kwitek*, 694 F. Supp. 2d at 227-28.

Relying on controlling Supreme Court and the Second Circuit precedent, this court found Mr. Kwitek's negligence claims to be

> . . . broad enough to encompass not only the government's decisions regarding contractual delegation of the responsibility for loading and unloading the mail, or procurement of appropriate containers, but also the conduct of government employees unrelated to any plausible policy objectives, such as failure to provide assistance at the loading dock in accordance with established practice and protocol. This assessment is supported by the trial testimony indicating a reasonable expectation on behalf of both plaintiff and LaSalle Station employees that someone other than plaintiff would be available on the day in question to load the mail on to the Midwest truck. Based on this view, the court cannot conclude that the conduct alleged to have caused the harm in this case necessarily involves "an element of judgment . . . of the kind that the discretionary function exception was designed to shield."

*Id.* at 228-29 (quoting *Varig Airlines*, 467 U.S. at 813); *see also Coulthurst*, 214 F.3d at 109-11. The court therefore denied the government's motion to dismiss, and the case proceeded to trial.

The government seeks to distinguish the court's holding in *Kwitek*, relying on evidence in this case suggesting a direct causal connection between the USPS's decision to implement the Collapsible Wire Container and the negligent conduct alleged to have caused plaintiff's injury in this case–namely, the unsafe condition of the loading dock at the Dunkirk postal facility. According to the government, the declaration of Scott Bombaugh, Manager of Material Handling Technology for the USPS (Item 36), establishes that the decision to use the new Collapsible Wire Container clearly involved discretionary judgments grounded in considerations of public policy, and plaintiff's own deposition

testimony shows that the loading dock problems arose only after the USPS began using those new containers. Based on this proof, the government contends that it has satisfied its burden under the *Varig/Berkovitz/Gaubert* test to warrant application of the discretionary function exception.

As it did in *Kwitek*, this court finds guidance in the Second Circuit's *Coulthurst* decision. In *Coulthurst*, the plaintiff was a federal prisoner who brought an FTCA action against the United States seeking to recover damages for injuries sustained when a cable snapped on a weight lifting machine he was using in the prison's weight room. He claimed that the prison was negligent in its inspection and maintenance of the weight lifting equipment. The district court granted the government's motion to dismiss for lack of subject matter jurisdiction based on the discretionary function exception, finding that the acts alleged as negligent involved elements of judgment about maintenance procedures and frequency of inspection, requiring a balancing of relevant policy considerations. The Second Circuit disagreed, finding that the complaint was broad enough to encompass not only negligence in the decision making process regarding design or implementation of appropriate inspection and maintenance procedures, but also "a very different type of negligence:"

> For example, the official assigned to inspect the machine may in laziness or haste have failed to do the inspection he claimed (by his initials in the log) to have performed; the official may have been distracted or inattentive, and thus failed to notice the frayed cable; or he may have seen the frayed cable but been too lazy to make the repairs or deal with the paperwork involved in reporting the damage. Such negligent acts neither involve an element of judgment or choice within the meaning of *Gaubert* nor are grounded in considerations of governmental policy.

*Coulthurst*, 214 F.3d at 109. According to the court, this type of conduct does not "reflect the kind of considered judgment 'grounded in social, economic, and political policy' " necessary to invoke the application of the discretionary function exception. *Id.* at 111 (quoting *Varig Airlines*, 467 U.S. at 814).

In this case, plaintiff claims that his injury was caused by the government's failure to properly maintain the surface of the loading dock at the Dunkirk Post Office. In this court's view, this type of negligent conduct does not involve an element of judgment or choice grounded in any of the policy objectives asserted by the government, "such as budgetary constraints, efficiency, productivity, and ergonomics." Item 36, ¶ 11. While it is true that the unsafe condition of the dock may be causally related to the government's discretionary decision to implement the new Collapsible Wire Containers, the same can be said about the causal relationship between the condition of the weight-lifting equipment at issue in *Coulthurst* and the government's policy-based decisions regarding procedures for inspection of that equipment. The government has provided no authority for the proposition that Congress intended the discretionary function exception to operate as a shield against all claims of negligent conduct arising out of a particular policy-based judgment about such matters as implementation of appropriate equipment or procedures at government facilities.

As in *Kwitek*, and based on the binding precedent of *Coulthurst*, a fair reading of the complaint in this case reveals allegations of negligence broad enough to encompass not only the government's decision to implement more efficient containers to transport the mail, but also conduct of government employees unrelated to the policy objectives underlying the decision, such as failure to maintain the loading dock surface in a manner sufficient to

eliminate or minimize any unsafe condition caused by the use of the new containers. Accordingly, the court finds that the government has failed to satisfy both prongs of the *Varig*/*Berkovitz*/*Gaubert* test, and therefore the discretionary function exception does not apply.

## **CONCLUSION**

For the foregoing reasons, the United States' motion to dismiss the complaint for lack of subject matter jurisdiction (Item 33) is denied.

A telephone conference is scheduled for April 20, 2011, at 2 p.m. to discuss a schedule for further proceedings. The court will initiate the call.

So ordered.

_____\s\ John T. Curtin____
JOHN T. CURTIN
United States District Judge

Dated:  3/30                           , 2011
p:\pending\08-610.mar30.2011